UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARTH MINTO, | ) | 3:21-CV-477 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LIRIANO and REID, | ) | |
| *Defendants*. | ) | August 24, 2023 |
| | ) | |
| | ) | |

**RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Garth Minto, a sentenced inmate[1] in the custody of Connecticut Department of Correction ("DOC"), alleges that Defendants Lieutenant Liriano and Officer Reid violated his Eighth Amendment rights when they failed to provide him with the opportunity to receive emergency medical care after a van in which Plaintiff was being transported was in a traffic accident.

Defendants have moved for summary judgment, arguing, in part, that Plaintiff failed to exhaust his administrative remedies. Plaintiff opposes Defendants' motion, arguing that he exhausted his claims. Because Plaintiff's claims are not exhausted, Defendants' motion for summary judgment is GRANTED.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). On July 26, 2018, Minto was sentenced to twenty years of incarceration and is now housed at Cheshire Correctional Institution ("Cheshire C.I."). *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num =404777 (last visited August 23, 2023).

I.      **PROCEDURAL HISTORY**

Plaintiff initiated this action in April of 2021, alleging violations of his constitutional rights in connection with injuries allegedly sustained on January 17, 2020, during a traffic accident between the DOC van in which he was riding and another vehicle. *See* ECF No. 1. On initial review, the Court dismissed the complaint for failure to state a claim, but permitted Plaintiff an opportunity to file an amended complaint. Fist Initial Review Order ("IRO"), ECF No. 14. Plaintiff then filed an amended complaint on August 9, 2021. Am. Compl., ECF No. 18. The Court permitted Plaintiff to proceed with his amended complaint on his Eighth Amendment deliberate indifference claims against Defendants Reid and Liriano. Second IRO, ECF No. 22.

Following a period of discovery, Defendants moved for summary judgment, arguing: (1) Plaintiff failed to exhaust his available administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff cannot prevail on the merits of his Eighth Amendment claims; and (3) Defendants are entitled to qualified immunity. Mot. for Summ. Judg., ECF No. 48. On November 30, 2022, Plaintiff responded to Defendants' motion. Pl.'s Opp., ECF No. 51. On December 12, 2022, Defendants filed a reply brief asserting, among other things, that Plaintiff's response failed to comply with the procedural requirements of this District's Local Rule of Civil Procedure 56. Defs.' Reply, ECF No. 52.

On December 21, 2022, Plaintiff filed a motion to resubmit his response to Defendants' motion for summary judgment to include recently acquired documents that supported his claims. Pl.'s Mot. to Resubmit, ECF No. 53. The Court construed Plaintiff's motion as a request to submit a sur-reply, which the Court granted. Order, ECF No. 54. The Court directed Plaintiff to "submit his updated opposition to Defendants' motion for summary judgment no later than January 5,

2023." *Id.* To date, Plaintiff has not filed his "updated opposition" or any further documents with the Court. *Id.*

## II.     FACTUAL BACKGROUND[2]

The following factual background reflects the Court's review of the Amended Complaint, Defendants' Local Rule ("L.R.") 56(a)1 Statement ("St."), and all supporting materials. *See* Am. Compl., ECF No. 18; Defs.' L.R. 56(a)1 St., ECF No. 48-2. All facts are undisputed unless otherwise stated.[3]

On January 17, 2020, Correction Officer Reid was transporting Plaintiff and another inmate from UCONN to Cheshire Correctional Institution ("Cheshire C.I.") in a van. Defs.' L.R. 56(a)1 St., ECF No. 48-2, ¶¶ 29–30. During the transport, another vehicle struck the right side of the van. *Id.* ¶ 30. After the collision, Officer Reid checked with the inmates to ensure they were uninjured. *Id.* ¶ 31. Defendants contend that both inmates affirmatively responded they were not hurt, *id.*, but Plaintiff alleges that he immediately began to feel pains "of a serious nature" in different parts of his body, and that he told Officer Reid about his need for medical attention, Am. Compl. ¶¶ 25, 27. Officer Reid contacted his supervisor, Lieutenant Liriano, to report that the transport van had been in a collision. Defs.' L.R. 56(a)1 St., ¶ 33.

---

[2] Generally, the Court cites only to the relevant paragraph in Defendants' Local Rule 56(a)1 Statement where a fact is not disputed.

[3] Defendants provided Plaintiff a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under L.R. 56. Notice to *Pro Se* Litigant, ECF No. 48-9. L.R. 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." L.R. 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Plaintiff has not filed a L.R. 56(a)2 statement in compliance with this District's Local Rules of Civil Procedure. Accordingly, the Court considers Defendants' statements of fact to be true where supported by the evidence.

When Lieutenant Liriano arrived at the scene, members of the local police and emergency services departments had already arrived. *Id.* ¶ 37. Liriano communicated to Reid that the inmates were to be evaluated by medical staff at Cheshire C.I. *Id.* ¶ 39. After Liriano opened the sliding door of the van, he observed both inmates sitting in an upright position and informed them that they would be assessed by medical staff at Cheshire C.I. *Id.* ¶ 41. At no point did Reid or Liriano observe blood or visual injury on Plaintiff. *Id.* ¶ 48.

Later that day, a nurse at Cheshire C.I. screened Plaintiff. *Id.* ¶ 53. The nurse noted that Plaintiff denied blurry vision and headaches, and had "no marks, no openings," or swelling. *Id.* ¶ 54. The nurse instructed Plaintiff to return to the medical unit if his symptoms worsened. *Id.* After the initial screening, X-rays and an MRI confirmed Plaintiff did not suffer fractures, abnormalities, or the type of damage associated with serious impact from a motor vehicle collision. *Id.* ¶ 57; Defs.' Ex. C, Decl. of Dr. Freston, ECF No. 48-5, ¶¶ 18–19.

### III.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is . . . such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in

dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed

5

to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### IV. EXHAUSTION

Defendants' motion for summary judgment first argues that Plaintiff's claims should be dismissed for failure to exhaust the prison's administrative remedies, as required by the PLRA. For the reasons described below, the Court agrees. Therefore, the Court grants Defendants' motion for summary judgment without reaching Defendants' other arguments.

#### A. The PLRA's Exhaustion Requirement

The PLRA requires incarcerated plaintiffs exhaust all administrative remedies available before filing a claim under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," meaning plaintiffs must exhaust all available remedies in "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion of administrative remedies serves "two main purposes." *Id.* at 89 (addressing exhaustion requirements under the PLRA). First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Id.* (cleaned up). Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Although a plaintiff "need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims." *Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020)

6

(summary order); *Demuth v. White*, No. 9:18-CV-915, 2020 WL 1030649, at *4 (N.D.N.Y. Mar. 3, 2020) (explaining that a plaintiff's claim may be "unexhausted" when the plaintiff "fails to fairly raise [their] claims in the grievance").  To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections officials 'to the nature of the claim,' and 'provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures.'" *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).  If a plaintiff does not provide such description or notice, correctional officials are not afforded the "opportunity to address complaints internally," and Congress requires incarcerated plaintiffs to pursue internal remedies before filing in federal court.  *Porter v. Nussle*, 534 U.S. 516, 525 (2002).  Put simply, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement."  *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

The exhaustion requirement may be excused, however, when the administrative remedy is not available in practice even if it is "officially on the books."  *See Ross v. Blake*, 578 U.S. 632, 642–43 (2016).  This requires an inmate "to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  The Supreme Court has set forth three circumstances where administrative procedure is considered unavailable:  (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through

7

machination, misrepresentation, or intimidation." *Id.* at 643−44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

B.  Available Administrative Remedies

For inmates housed in Connecticut state correctional facilities, the DOC's Administrative Directives provide the specific requirements an inmate must follow prior to filing a lawsuit in federal court. Claims related to conditions of confinement and deliberate indifference to health by correctional staff are subject to the inmate grievance procedure set forth in A.D. § 9.6(6) (revised Aug. 15, 2013).[4]  *See Cosme v. Faucher*, No. 3:21-CV-1341 (SVN), 2022 WL 16540861, at *3 (D. Conn. Oct. 28, 2022).

Under the procedures in place during the timeframe relevant to Plaintiff's claim, an inmate should have first attempted to resolve the health matter informally. For example, an inmate could have attempted to verbally resolve the issue with an appropriate staff member or supervisor. *See* A.D. § 9.6(6)(A), ECF No. 48-4 at 15. If attempts to resolve the matter verbally were ineffective, then the inmate would have to make a written complaint by sending a form CN 9601 (Inmate Request Form) to the appropriate staff member. *See id.* The written form needed to "clearly state the problem and the action requested to remedy the issue." *Id.* Pursuant to the Directive, the

---

[4] Defendants have submitted, as an attachment to their motion, the version of A.D. 9.6 that was in effect at the timeframe relevant to Plaintiff's claims. *See* Ex. B to Defs.' Mot., Decl. of Administrative Remedy Coordinator ("ARC") Cooper, Attach. 1, ECF No. 48-4.  A revised version of A.D. 9.6 became effective on April 30, 2021. A.D. 9.6, Inmate Administrative Remedies (revised Apr. 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited Aug. 23, 2023).

correctional staff were required respond to a written form within fifteen business days of receipt. *Id.*

If an inmate was not satisfied with the informal resolution offered, then he could file a Level 1 grievance. *See id.* § 9.6(6)(C). The Level 1 grievance needed to be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and inmates were directed to include with the grievance a copy of the response to the inmate's written request to resolve the matter informally or an explanation for why the response was not attached. *See id.* The Unit Administrator would respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* § 9.6(6)(I). The grievance would then be returned without disposition, rejected, denied, compromised, upheld, or withdrawn. *See id.* §§ 9.6(6)(D) & (E).

The procedures also provided that the inmate could appeal the Unit Administrator's disposition of the Level 1 grievance, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 grievance. *See id.* §§ 9.6(6)(G), (I), (K). An inmate seeking to appeal a Level 1 grievance would then file a Level 2 appeal within five calendar days of the inmate's receipt of the decision on the Level 1 grievance. *See id.* § 9.6(K). An inmate seeking to appeal the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must have done so within sixty-five days of inmate's filing of the Level 1 grievance. *See id.* § 9.6(M). Level 2 appeals were reviewed by the appropriate District Administrator. *See id.* § 9.6(6)(K). The District Administrator was required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals were restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 appeals to which there had been no timely response by the District Administrator. *See id.* § 9.6(6)(L). A Level 3 appeal was to be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner needed to be filed within thirty-five calendar days of the filing of the Level 2 appeal. *See id.* § 9.6(6)(M). Level 3 appeals were reviewed by the Commissioner of the Department of Correction or his or her designee. *See id.* § 9.6(6)(L).

### C. Plaintiff Has Failed to Exhaust Available Remedies

The Court holds that Plaintiff failed to exhaust administrative remedies.

Under A.D. § 9.6(6), Plaintiff was required to file a Level 1 grievance within thirty calendar days of the "occurrence or discovery of the cause of the grievance," ECF No. 48-4 at 16. Here, thirty days after the January 17, 2020, accident was February 16, 2020.[5]

In support of their motion for summary judgment, Defendants have submitted the declaration of ARC Cooper. As part of her duties, ARC Cooper maintains the grievance log, a record of all grievances and grievance appeals filed by inmates at Cheshire C.I.. *See* Defs.' Ex. B, Decl. of ARC Cooper at ¶ 4, ECF No. 48-4. ARC Cooper conducted a search for Plaintiff's grievance filings at Cheshire C.I. between January 1, 2020, and June 30, 2020. *Id.* at ¶ 23. ARC Cooper declares that Plaintiff submitted a grievance dated February 17, 2020. *Id.* ¶¶ 25. In this Level-1 Grievance, Plaintiff stated:

> Was waiting until I had more information but was involved in an accident involving CTU transportation and sustained injuries and would like to be compensated. I have obtained an

---

[5] February 16, 2020, was a Sunday. There appears to be no provision in the Administrative Directive, however, providing that due dates falling on weekends are automatically extended to the next business day.

  attorney and he has been trying to contact the facility to further this matter and was unable to reach anybody. I also wrote to the FOI but haven't had any reports of the incident given to me.

ECF No. 48-4 at 75.  This Level-1 Grievance was returned without disposition on February 21, 2020.  *Id.* at 74.  The Returned Without Disposition form, CN 9606, stated that Plaintiff had failed to comply with (1) Directive 9.6(6)(C) by either attaching his CN 9601, Inmate Request form, or stating why it was not attached; (2) Directive 9.6(5)(E)(2) by stating each issue or grievable matter in a separate CN 9602; and (3) Directive 9.6(5)(E)(3) by stating his grievance and action requested simply and coherently.  *Id.*; *see also* ECF No. 48-4 at 15–19 (A.D. § 9.6(6)).  The comments section of the form CN 9606 stated:  "You are not stating a specific grievance; you are just stating you want to be compensated and are bringing up more than one issue. Also you did not attempt an informal resolution."  ECF No. 48-4 at 74.  ARC Cooper avers that Plaintiff did not file any other Level-1 or Level-2 Grievances at Cheshire C.I. between January 1, 2020, through June 30, 2020.  *Id.* at ¶ 40.[6]

  Defendants first argue that Plaintiff's February 17, 2020, grievance was untimely, as it was filed one day after his February 16, 2020, deadline.  As there appears to be no provision of the Administrative Directive moving a weekend deadline to the next business day, Defendants are correct that the grievance was untimely filed.

  Even if the February 17, 2020, grievance was timely filed, it did not serve to give Defendants notice of the particular claims alleged in this lawsuit.  Notice is sufficient if a detainee has "allege[d] facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate

---

[6] ARC Cooper attaches to her declaration a copy of the full grievance log for Cheshire C.I. for the period from July 1, 2019, through June 30, 2020.  Defs.' Ex. B, Decl. ARC Cooper, ECF No. 48-4 at 28–72.

11

responsive measures." *Singh*, 460 F. App'x at 47 (summary order) (cleaned up).  Plaintiff's grievance fails to give necessary details.  As Plaintiff admits, he submitted the grievance while still "waiting" for "more information" because he had not yet "had any of the reports of the incident" given to him.  ECF No. 48-4 at 75.  Plaintiff simply states he was "involved in an accident" and "sustained injuries" for which he sought to be compensated.  *Id.*  The sparse allegations in the grievance reflect Plaintiff's limited access to information about the specifics of the accident, but, importantly, this lack of information would not have impeded Plaintiff's ability to know about his alleged injuries and Defendants alleged failure to treat those injuries.  As written, the grievance does not allege that Defendants failed to treat Plaintiff for his allegedly serious injuries.  Had it so stated, prison officials could have acted on the grievance and, potentially, remedied the medical issue without the need for the filing of a federal lawsuit, which is one of the central purposes of the exhaustion requirement.

And even if the grievance did give appropriate notice to Defendants, it is undisputed that Plaintiff failed to resubmit the Level 1 grievance or pursue any appeals related to his alleged injuries.  As Plaintiff has provided no evidence that he attempted to exhaust his available remedies prior to filing the instant action, he has failed to raise a question of material fact regarding this issue.

### D.  Plaintiff Was Not Excused from the Exhaustion Requirement

Having determined that Plaintiff has not exhausted the administrative remedies available to him, the Court considers whether there is a legal basis to excuse Plaintiff from this requirement. The exhaustion requirement is excused in three circumstances:   when it operates as a simple dead

end, when it is so opaque that it becomes incapable of use, or when prison officials thwart the inmate from taking advantage of the process. *Ross*, 578 U.S. at 643–44.

In his one-and-a-half-page response to Defendants' motion, Plaintiff claims that he could not file any further grievances after his Level-1 Grievance was returned without disposition because Cheshire C.I. had "begun the 'sick-call' protocol which medical staff were no longer responding to CN9601 forms." Pl.'s Opp. at 1, ECF No. 51. But any medical staff members' failure to respond to inmate grievances was not relevant to Plaintiff's ability to exhaust his remedies for his claims against the *correctional* staff he has sued here, which were required to be exhausted through the procedures under Directive 9.6. *See Green v. Riffo*, No. 18-CV-960 (SALM), 2022 WL 94224, at *2, *4 (D. Conn. Jan. 10, 2022) (noting that CN 9601 forms are sent to and responded by correctional staff); *Cruz v. Naqvi*, No. 21-CV-8 (SALM), 2022 WL 4225491, at *7 (D. Conn. Sept. 13, 2022) (same); *see also* A.D. § 9.6(6)(I) (providing that "[t]he Unit Administrator would respond in writing to the Level 1 grievance"). In any event, Plaintiff could not have been thwarted from filing his Level-1 Grievance, CN 9602, on the basis of DOC staff members' failure to answer his inmate requests because Directive 9.6(6)(C) permits an inmate to file a Level-1 Grievance with "an explanation indicating why CN 9601, Inmate Request Form, is not attached." *See Rooks v. Santiago*, No. 3:20CV299 (MPS), 2022 WL 561412, at *9 (D. Conn. Feb. 24, 2022). Yet Plaintiff filed no such explanation.

In addition, Defendants have submitted the grievance log showing that inmates at Cheshire C.I. were able to file numerous grievances under Directive 9.6 from July 1, 2019, through June 30, 2020. *See* Decl. of ARC Cooper, attach. 3, ECF No. 48-4. The record therefore does not support

13

Plaintiff's assertion that a Cheshire C.I. policy or practice prevented inmates from availing themselves of their remedies at the relevant time.

Finally, the Second Circuit has held that A.D. 9.6, while "rigorous," is "not so opaque as to be unavailable, plainly stating that [if] the verbal option does not resolve the issue, the inmate shall submit a written request . . . ." *Riles v. Buchanan*, 656 Fed. App'x 577, 581 (2d Cir. 2016) (summary order).

Accordingly, after review of the record, the Court concludes that there are no questions of material fact concerning whether Plaintiff should be excused from exhausting the administrative remedies that were available to him, and summary judgment must be granted in Defendants' favor. In light of this conclusion, the Court need not reach Defendants' other arguments in favor of dismissal.

## V.     CONCLUSION

For the reasons discussed herein, Plaintiff failed to exhaust the available administrative remedies prior to filing the instant action, and such failure was not excused.

Defendants' motion for summary judgment is therefore GRANTED. The Clerk is instructed to close this case.

**SO ORDERED** at Hartford, Connecticut this 24th day of August, 2023.

                                             */s/ Sarala V. Nagala*
                                             SARALA V. NAGALA
                                             UNITED STATES DISTRICT JUDGE